**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**YOLANDA HERNANDEZ,**
Plaintiff,

          **v.**                           **CASE NUMBER: 02-2750 (DRD)**

**SMITH KLINE BEECHAM
PHARMACEUTICAL, et. al.,**
Defendants.

**OPINION AND ORDER**

Pending before the Court is the defendants Smith Kline Beecham Pharmaceuticals (SmithKline), and Jose Ramon Rivera's *Defendants' Motion for Summary Judgment* (Docket No. 26) moving the Court to dismiss plaintiff's claims under ADA, sexual harassment in the hostile work environment under Title VII, and various supplemental jurisdiction claims under different local statutes.  For the reasons stated herein the Court hereby **ADOPTS *in toto*** the Magistrate Judge's Report and Recommendation (Docket No. 49) and **GRANTS** defendants' request for brevis disposition (Docket No. 26).

**MAGISTRATE REPORT AND RECOMMENDATION**

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); Fed.R.Civ. P. 72(b); Rule 503, Local Rules, District of Puerto Rico. See Mathews v. Weber, 423 U.S. 261 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. See Local Rule 510.2(A); Fed.R.Civ. P. 72(b). Moreover,  28 U.S.C. § 636(b)(1), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

See 28 U.S.C. § 636(b)(1).

However, pursuant to Fed.R.Civ. P. 72(b), "[a]bsent objection by the plaintiffs, the district

court had a right to assume that plaintiffs agreed to the magistrate's recommendation." Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992). See also Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); Lewry v. Town of Standish, 984 F.2d 25, 27 (1st Cir. 1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); Keating v. Secretary of H.H.S., 848 F.2d 271, 275 (1st Cir. 1988); Borden v. Secretary of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). See generally United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

Provided plaintiff has objected to all the determinations addressed by the Magistrate, the Court shall make a de novo determination of the R & R.

### STANDARD FOR SUMMARY JUDGMENT

The standard for summary judgment has been revisited by the First Circuit Court of Appeals on several occasions. Serapion v. Martinez, 119 F.3d 982, 986 (1st Cir. 1997),( citing McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir.1995))(collecting cases); Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995)(same). A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial worthy issue as to any material fact. Perez v. Volvo Car Corporation, 247 F.3d 303, 310 (1st Cir. 2001); Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000); Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is "material" if it potentially could affect the suit's outcome. Id. An issue concerning such a fact is "genuine" if a reasonable factfinder, examining the evidence and drawing all reasonable

inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. Id.  At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the nonmovant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." See Cadle Company v. Hayes, 116 F.3d 957, 959-60(1st Cir. 1997).

The summary judgment machinery operates in two phases. First, the movant must make a preliminary showing that there is no genuine issue of material fact which requires resolution in the crucible of trial.  Once this showing has been made, the burden shifts to the nonmovant to demonstrate, through specific facts, that a trialworthy issue remains.  Id.

In applying the standard, the court must construe the record and all reasonable inferences from it in favor of the nonmovant (the party opposing the summary judgment motion).  Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); Cortes-Irizarry, 111 F. 3d at 187; see also United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  An absence of evidence on a critical issue weighs against the party  –be it the movant or the nonmovant–  who would bear the burden of proof on that issue at trial.  Perez, 247 F. 3d at 310; see also Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998);  Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990).   Defendants must not only show that there is "no genuine issue of fact," but also that they are "entitled to judgment as a matter of law." Vega v. Rodriguez Puerto Rico Telephone Co., 110 F.3d 174, 178 (1st Cir. 1997).

FED.R.CIV.P. 56 does not ask which party's evidence is more plentiful, or better credentialed, or stronger weighted, because at the summary judgment stage, the Court may not weigh the evidence. Cortez-Irizarry, 111 F. 3d at 187; see also Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing Greensburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987)).  Further issues of motive and intent as to the conduct of any party normally forecloses summary judgment. Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996)(reversing summary judgment and noting that "determinations of motive and intent . . . are questions better suited for the jury")(internal quotation marks and citation omitted); see also, Tew v. Chase

Manhattan Bank, N.A., 728 F.Supp. 1551, 1555 (S.D.Fla. 1990)("Certain issues such as fraud, intent and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun' ").

## FACTUAL BACKGROUND[1]

Plaintiff Yolanda Hernandez was employed by defendant, SmithKline from January 8, 1979 until  termination from employment on November 21, 2000.  Due to clinical depression affecting plaintiff, in 1990 she was hospitalized and treated for said medical condition.  Furthermore, a medical recommendation was issued by then plaintiff's physician to work for an eight (8) hour shift during the daytime, and not to work in an isolated environment.  Smithkline transferred and accommodated plaintiff into a job position wherein said medical recommendations were duly complied.  Notwithstanding, in 1993 plaintiff suffered another mental crisis while performing the duties of her job.  Smithkline granted a medical leave of absence and her job position was secured. The Court notes the willingness of the employer that as result of the medical recommendations provided previously, Smithkline provided plaintiff with a straight day shift rather than the usual rotating day/night shift.

However, on October 18, 2000, plaintiff and another co-employee held a discussion which took place in the lobby of Smithkline's facilities during plaintiff's duty shift.  As a result, the day after said incident a meeting was held amongst plaintiff, her supervisor, and the Human Resources Officer wherein the incident that had taken place the day before was attended.  However, plaintiff in an emotional behavioral outburst stood up, yelled at the other participants, unilaterally ended the meeting and left for the defendant's infirmary.  Once upon Ms. Hernandez's arrival at the infirmary, plaintiff expressed openly her desire and willingness to kill both co-employees; plaintiff had to be sedated due her emotional condition.[2]

Prior to allowing plaintiff back to Smithkline's facilities, plaintiff was requested by the defendant's physician to obtain a medical certificate assuring that she was capable of returning to work assuring that the safety of Smithkline's employees would not be compromised.  On November

---

[1] For purposes of the disposition of the instant matter, the Factual Background is taken from defendants' Statement of Uncontested Facts since the motion for summary judgment was deemed unopposed.

[2] The Court notes that during the defendant's physician deposition the emotional conduct accepted displayed plaintiff as having suffered an "emotional crisis".

21, 2000, plaintiff met with Ms. Sonia Berrios, former Human Resources Manager and was informed of Smithkline's decision to terminate plaintiff from employment due to her various violations to Smithkline's rules of conduct and policies, the inappropriate behavior displayed against her co-employees, insubordination and threatening behavior.

Notwithstanding, on November 3, 2000, while off work, plaintiff filed a charge of discrimination under Title VII for alleged sexual harassment with the Puerto Rico's Anti-Discrimination Unit .  On November 22, 2000, after plaintiff's termination from employment the charge previously filed with the Anti-Discrimination Unit was amended to include Smithkline's adverse employment action.   Subsequently, on December 21, 2000, plaintiff filed a third administrative charge under disability discrimination pursuant to ADA.  As stated previously, the plaintiff seeks redress for alleged disability discrimination under the American with Disabilities Act and its local state law counterpart by allegedly failing to reasonably accommodate her disability; sexual harassment under the working hostile environment modality pursuant to Title VII, and several claims under local state labor statutes and damages suffered by her as a result of infliction of emotional distress.

On November 15, 2004, co-defendants Smithkline and Jose Ramon Rivera, filed the instant motion for summary judgment requesting dismissal of plaintiff's claims sustaining that plaintiff's ADA claim is unwarranted since plaintiff has failed to establish that she is a qualified individual under ADA.  Movants sustain that plaintiff does not comply with the requirements of having an impairment "substantially limiting" a major life activity, and that she is not precluded from working in a different class/broad range of jobs.  In the alternative, Smithkline sustains that should the Court determine that plaintiff is an individual with a disability under ADA, plaintiff was not able to perform the essential functions of her position with or without accommodation and further the defendants complied with any legal obligation they may had providing reasonable accommodation to plaintiff.

Further, as to Ms. Hernandez's Title VII claims, Smithkline affirms that the conduct complained of was not sufficiently severe and pervasive altering the terms of employment, that plaintiff has failed to avail herself of the measures provided by the company's personnel policy against sexual harassment hence plaintiff failed to establish a Title VII claim for hostile work environment.  Moreover, Smithkline alleges that several of plaintiff's hostile work environment sexual harassment Title VII claims are time barred and that plaintiff's supplemental claims should

be dismissed for failing to state a claim upon which relief can be granted.

The procedural landscape reveals that on December 3, 2004, plaintiff moved for an extension of time until December 24, 2004, to file its opposition to defendants' motion for summary judgment. (Docket No. 29).[3]  On December 19, 2004, plaintiff's request for an extension of time was denied basically due to plaintiff's failure to request the extension of time within the ten (10) days provided by Local Rule 7.1(b) to oppose the dispositive motion.  (Docket No. 31).  On February 3, 2005 (Docket No. 33) plaintiff moved for the Court's reconsideration of the denial of the extension of time and tendered its opposition to defendants' summary judgment motion (Docket No. 34).  After several additional filings by the instant parties addressing whether the reconsideration should be granted and whether the plaintiff's opposition to the summary judgment should be stricken from the record, the Court denied the reconsideration and plaintiff's opposition to the summary judgment was ordered stricken from the record (Docket No. 42).  Consequently, defendants' motion for summary judgment request was deemed unopposed.

On June 8, 2005, the undersigned referred through the random case assignment system the instant motion for summary judgment to a Magistrate Judge for a Report and Recommendation (R & R) (Docket No. 45).  In its Order of Referral the Court advised the parties that objections to the said R & R should be filed within ten (10) days of the issuance, that no extensions of time were to be granted, and that failure to file within the given deadline would waive the objections to the R & R.  On August 31, 2005, Magistrate Judge Aida Delgado Colon issued its R & R recommending (Docket NO. 49) that Smithkline's motion for summary judgment be granted and that the ADA and Title VII claims against co-defendant Jose Ramon Rivera, in his personal capacity, be dismissed with prejudice; that the ADA and Title VII claims against Smithkline be dismissed with prejudice; and that all supplemental claims pursuant to state local law be dismissed without prejudice. Notwithstanding the clearly communicated Court's orders as to the timeliness for the objections to the R & R, plaintiff again moved for an untimely request for an extension of time to file its objections to the Magistrate Judge's R & R.  (Docket No. 50).  Notwithstanding the clearly communicated Court's orders and being the parties duly forewarned, the Court will consider the objections filed by plaintiff and conduct a *de novo* review as opposed to "plain error".  Douglass v. United Servs. Auto, Ass'n, 79 F.3d 1415, 1419 (5ᵗʰ Cir. 1996)(en banc)(extending the deferential

---

[3] As stated previously, the instant motion for summary judgment was filed on November 15, 2004, hence plaintiff had until December 1, 2004 to file its opposition to defendants' dispositive motion.

"plain error" standard of review to the unobjected to legal conclusions of a magistrate judge); Nettles v. Wainwright, 677 F.2d 404, 410 (5ht Cir. 1982)(en banc)(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error");   Nogueras-Cartagena v. United States, 172 F.Supp.2d 296, 305 (D.P.R. 2001)("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED.R.CIV.P. 72(b)); ; Garcia v. I.N.S., 733 F.Supp. 1554, 1555 (M.D.Pa. 1990)( "when no objections are filed, the district court need only review the record for plain error").

## LEGAL FRAMEWORK

### A. INDIVIDUAL LIABILITY UNDER ADA AND TITLE VII CLAIMS

At the outset, the Magistrate Judge recommended that plaintiffs' ADA and Title VII claims against individual co-defendant Jose Ramon Rivera should be dismissed for their failure to state a claim upon which relief can be granted because in this district it has been decided that individual liability/personal liability does not attach to agents or supervisors under Title VII, ADA, ADEA, and the Rehabilitation Act.  However, the Magistrate Judge recommended that said claims should be dismissed since this District Court follows the majority of other sister courts holding that no such personal liability may be imposed under said claims.  Plaintiff objects the R & R on the grounds that recent case law from the Supreme Court of Puerto Rico, Rosario Toledo v. Kikuet, Inc., 151 D.P.R. 634, (2000) holds under local law (as opposed to federal law) that a supervisor may be liable for acts of discrimination performed in the work environment.  Consequently, plaintiff invites the Court to examine said decision and to rule similarly.

However, it is the law in this Circuit that legal arguments alluded to in a perfunctory manner but unaccompanied by a developed argumentation, are deemed abandoned.  U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  Further, "it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones".  Id.  After all, "[J]udges are not expected to be mindreaders.  Consequently, a litigant has an obligation 'to spell out its arguments square and distinctly,' or else forever hold its peace".  Id., citing Rivera de Gomez v. Castro, 843 F.2d 631, 635 (1st Cir. 1988)(quoting Patterson-Leitch Co. v. Massachusets Municipal Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988)).

Precisely, this is what plaintiff has done in its proposal.  Plaintiff has presented an argument

moving the Court to adopt the recent case law of the Puerto Rico Supreme Court without providing the necessary backbone to so holds. The Court shall not develop an argument as to the applicability of said jurisprudence when plaintiff failed in developing an argument of its applicability. U.S. v. Zannino, 895 F.2d at 17. Consequently, plaintiffs arguments as to the applicability of the doctrine set forth in Rosario Toledo v. Kikuet, Inc., *supra*, to the federal actions are deemed abandoned.

Notwithstanding, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibits any employer, employment agency, or labor organization from engaging in unlawful employment practices based upon an individual's race, color religion, sex, or national origin. 42 U.S.C. § 2000e. Specifically, the term employer refers to a person engaged in an industry affecting commerce, employing fifteen (15) or more employees for twenty (20) or more weeks in the current preceding calendar year from the date of the alleged discriminatory act. Co-defendant, Jose Ramon Rivera asserts that the claims against him in his personal capacity should be dismissed, because Title VII does not allow a cause of action against him in its individual capacity.

This Court has recently addressed the issue as follows:

> "First, the Court agrees that the ADEA does not provide for the imposition of individual liability. The First Circuit Court of Appeals and the Supreme Court have yet to decide this issue of individual liability of supervisors. See e.g. Serapion v. Martinez, 119 F.3d 982, 992 (1st Cir.1997) (circuit has not resolved issue and declined to address); see also Scarfo v. Cabletron Systems, Inc., 54 F.3d 931, 951-952 (1st Cir.1995) (similar). This district, and in particular the undersigned, has followed the majority of circuits that have confronted this issue holding that no personal liability can attach to agents and supervisors under Title VII or ADEA. See, Acevedo Vargas v. Colón, 2 F.Supp.2d 203, 206-207 (D.P.R.1998) (Title VII); Contreras Bordallo v. Banco Bilbao Vizcaya de P.R., 952 F.Supp. 72 (D.P.R.1997) (Title VII); Rodriguez v. Puerto Rico Marine Management, Inc., 975 F.Supp. 115, 120 (D.P.R.1997) (ADEA)."

Julia v. Janssen, Inc., 92 F.Supp.2d 25, 28-29 (D.P.R. 2000) (citing Diaz v. Antilles Conversion & Export, Inc., 62 F.Supp.2d 463, 465 (D. P.R. 1999) (DRD) (ADEA)). See Vicenty Martell v. Estado Libre Asociado de P.R., 48 F.Supp.2d 81, 87 (D. P.R. 1999) (SEC) (ADA and ADEA); Sifre v. Department of Health, 38 F.Supp.2d 91, 105-106 (D. P.R. 1999) (JP) (ADA and Rehabilitation Act); **Figueroa v. Fajardo, 1 F.Supp.2d 117, 120 (D. P.R. 1998) (RLA) (ADA); Rivera Rodriguez v. Police Dep't of P.R., 968 F.Supp. 783, 785-786 (D. P.R. 1997) (JP) (ADA); Moreno v. John**

**Crane, Inc., 963 F.Supp. 72, 76 (D. P.R.1997) (SEC) (ADA)**; Figueroa v. Mateco, Inc., 939 F.Supp. 106, 107 (D. P.R. 1996) (PG) (ADEA); **Hernandez v. Wangen, 938 F.Supp. 1052, 1063-65 (D. P.R. 1996) (HL) (Title VII)**; **Anonymous v. Legal Serv. Corp., 932 F.Supp. 49, 50-51 (D. P.R. 1996) (PG) (ADA)**; Flamand v. American Int'l Group, Inc., 876 F.Supp. 356, 361-64 (D. P.R. 1994) (HL) (ADEA); see also Meara v. Bennett, 27 F.Supp.2d 288, 290 (D. Mass. 1998) (ADA); **Miller v. CBC Companies, Inc., 908 F.Supp. 1054, 1065 (D. N.H.1995) (ADA)**; see generally Montez v. Romer, 32 F.Supp.2d 1235, 1241 (D. Colo.1999) (Rehabilitation Act); Baublitz v. California, No. C98-0434 CRB, 1998 WL 427444 at * 1 (N.D. Cal. July 27, 1998) (Rehabilitation Act); Huck v. Mega Nursing Servs., Inc., 989 F.Supp. 1462, 1464 (S.D. Fl.1997) (Rehabilitation Act).[4]

## B. CLAIMS UNDER THE AMERICAN WITH DISABILITIES ACT

A.D.A. is the federal civil rights statute, enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); Jacques v. Clean up Group, 96 F.3d 506, 510 (1st Cir., 1996); Katz v. City Metal Co. Inc , 87 F.3d 26, 30 (1st Cir., 1996); Grenier v. Cyamid Plastics Inc., 70 F.3d 667, 671 (1st Cir. 1995). In the employment context, the A.D.A. prohibits discrimination against a qualified individual with a disability, because of the disability of such individual, in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); Katz v. City Metal Co. Inc, 87 F.3d at 30; Grenier v. Cyanamid Plastics, Inc., 70 F.3d at 671. In an effort to eliminate discrimination against individuals with disabilities, the statute prohibits employers from discriminating against "a qualified individual with a disability because of the disability." Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 14 (1st Cir.,1997).

To establish a claim of disability discrimination under the A.D.A., a plaintiff must first demonstrate, that she is disabled within the meaning of the Act. That is, she has to establish either: (1) a physical or mental impairment that substantially limits one or more of her major life activities;

---

[4] The reasoning of the Court was best explained by former Chief Judge Laffitte at Hernandez v. Wangen, *supra*. Should Congress have desired individual liability it would have stated so and would not have excerpted small corporations of less than "fifteen or more" employees from coverage. Hernandez v. Wangen, 938 F.Supp. at 1064 ("[F]inally, the language og the Civil Rights Act of 1991, reflects Congress' pellucid desire to protect small corporate entities from the burdens of litigating discrimination suits. (citations omitted). It shields all defendants with fewer than fifteen employees from liability. 42 U.S.C.A. §1981a(a)(3)(1994)".)

(2) a record of such impairment; (3) or that she is being regarded as having such an impairment. See, Bailey v. Georgia-Pacific Corporation, 306 F.3d 1162, 1166 (1st Cir. 2002); 42 U.S.C. § 12102(2); Carroll v. Xerox, 294 F.3d 231, 237 (1st Cir. 2002).

A three-part analysis is applied when considering, whether the plaintiff has a physical or mental impairment that substantially limits one or more of her major life activities. First, the Court must consider whether plaintiff's condition constitutes a mental or physical impairment. Second, the Court shall identify the life activity upon which plaintiff relies, and must determine whether the condition constitutes a major life activity under the ADA. Third, the Court must ask whether the impairment substantially limits the employee's major life activity. Bragdon v. Abbott, 524 U.S. 631 (1998); Carroll v Xerox Corp., 294 F.3d at 238; Toyota Motor Mfg. Inc. v. Williams, 534 U.S. 184, (2002); Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 239-240 (1st Cir. 2001). "Major life activities are only those that are of central importance to daily life." Toyota Motor Mfg. v. Williams, 534 U.S. at 197-198.  Hence, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Id., at 198.

Whether a person has a disability under the ADA is an individualized inquiry, Sutton v. United Air Lines, 527 U.S. 471, 483(1999),[5] and the plaintiff has the burden of establishing each of the above referred elements(one of the elements being a limitation to a major life activity). Bailey v. Georgia-Pacific Corporation, 306 F.3d at 1167. The determination of whether an individual has a disability is based on the effect of that impairment on the life of the individual, taking into consideration that some impairments may be disabling for particular individuals but not for others. 29 C.F.R. § 1630, App. at 402; Katz v. City Metal Co. Inc, 87 F.3d at 32; quoting Chandler v, City of Dallas, 2 F.3d 1385, 1396 (5th Cir., 1995) (recognizing that "the effect of a given type of impairment...can vary widely from individual to individual").

Notwithstanding, to establish a *prima facie* case under ADA and obtain relief, a plaintiff must show (1) that she has a qualified disability, (2) that, with or without reasonable accommodations, she can perform the essential functions of the position she holds ("qualified individual"), (3) that she

---

[5] Considering that the ADA defines "disability" "with respect to an individual," 42 U.S.C. § 12102(2), "makes clear that Congress intended the existence of a disability to be determined in a case-by-case manner". Toyota Mfg. Inc v. Williams, 534 U.S. at 198; Sutton v. United Air Lines, 527 U.S. at 483; Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999).

was discriminated against because of her disability, (4) that she was replaced by a non-disabled person or was treated less favorably than non-disabled employees, and (5) damages were suffered as a result of the adverse employment action.  Terrel v. USAIR, 132 F.3d 621, 624 (11th Cir. 1998); Katz v. City Metal Co., Inc., 87 F.3d 26, 30 (1st Cir. 1996); Jacques v. Clean-Up Group, 96 F.3d at 511.

Relevant to the instant case, it is a fact that plaintiff has been suffering from a recurrent severe depression since 1990 and said depression has extended throughout plaintiff's employment for Smithkline.  The evidence on the record shows that in 1990 plaintiff was treated for "clinical depression", that she attempted suicide as a result of a "mental crisis" in 1993, and that in October 2000, during her employment for defendant, plaintiff suffered two (2) emotional outbursts that occurred within the defendant's facilities and which culminated in plaintiff's termination.  Further, plaintiff provided a medical certificate dated November 8, 2000, wherein it was indicated that she suffered from a recurrent severe major depression without psychotic features and that medications and treatment were prescribed, that plaintiff showed a severe depressive signs and symptoms but that she was fit to perform her work functions as long as it was performed on a daily work shift albeit plaintiff suffered certain difficulty to sleep.

The Magistrate Judge's R & R concluded reading the record in the light most favorable to plaintiff, that plaintiff's claims met the first prong necessary to establish a *prima facie* ADA claim to wit, that she had a disability within the meaning of the Act.  The R & R recognized that in this Circuit, depression, as a mental illness, in some circumstances may constitute a disability under ADA hence it may be deemed as a qualified mental impairment.  Criado v. IBM Corp., 145 F.3d 437, 442 (1st Cir. 1998).

Notwithstanding the finding of plaintiff suffering an impairment within ADA, the Magistrate Judge determined that the complaint failed to allege how said disability "substantially limited" any of plaintiff's major life activities.  The R & R reasoned that this omission, by itself, warranted the determination that plaintiff had failed to meet her burden showing that she was a qualified individual within the meaning of ADA.  Nevertheless, the Magistrate Judge did examine the allegations averred by plaintiff in the complaint and determined that it was evident that only two major life activities could be at issue, to wit, working and sleeping.

Firstly, as to the work related activity, the Magistrate Judge examined defendants' arguments

as to plaintiff not being able to show that the major life activity of working was substantially limited within the meaning of the Act. The R & R noticed that a medical certificate submitted by plaintiff's physician, Dr. del Valle, clearly stated that she could work **in a day shift**. Further, the Magistrate Judge reasoned that a finding of substantial limitation in working was not supported by the record because during plaintiff's deposition she admitted that as long as she took the prescribed medications her condition remained under control and she was able to fully perform the functions associated with her work. Finally, the Magistrate Judge emphasized the fact that after plaintiff's termination from employment at Smithkline, plaintiff held at least two other employments. In sum, the R & R concluded that plaintiff had failed to meet her burden showing that plaintiff was "substantially limited" to perform the major life activity of working.

Similarly, as to the major life activity of sleeping, the Magistrate Judge reasoned that the record failed to support a finding that plaintiff suffered a substantial limitation as to sleeping. The Magistrate Judge examined the record and concluded that plaintiff's condition is described as presenting some difficulty to sleep and that medications were prescribed so plaintiff could sleep. Further, the Magistrate Judge deemed that plaintiff had failed to indicate how her sleep limited or impaired a life activity nor whether her average sleeping hours were less than the average sleeping hours for the average person hence the Court was precluded to make a finding that plaintiff was "significantly restricted" in her ability to sleep. Consequently, the Magistrate Judge recommended that plaintiff's ADA claims be dismissed basically because plaintiff failed to establish her disability within the meaning provided by the Act.

Plaintiff objects to the Magistrate Judge's recommendation on several grounds. Firstly, as to plaintiff making a showing of a *prima facie* case under ADA, plaintiff attacks the Magistrate Judge's findings relating to plaintiff's failure alleging or describing how its depression limits a major life activity. The crux of plaintiff's arguments attempts to establish that there is no larger mental disability that plaintiff attempting suicide while at work. Furthermore, plaintiff challenges the conclusion reached by the Magistrate Judge as to plaintiff's ability to perform other jobs and provides self-serving reasons for plaintiff leaving said jobs.

Secondly, plaintiff sustains that she is a qualified individual within the meaning provided by ADA. However, the argument developed by plaintiff moves the Court to view the incident that caused plaintiff's termination in a fashion other than as expressed by the Magistrate Judge. Plaintiff

avers that the evidence presented by defendants in support of their motion for summary judgment shows that plaintiff's conduct did not pose a threat to her co-employees and this was a "but for" pretext to dismiss her from employment due to her disability. Plaintiff affirms that there is a genuine issue of material fact as to the content of plaintiff's threat to her co-employees because she alleges that the content was not geared towards a violent act but rather to take her co-employees to court.

Thirdly, plaintiff avers that she is a qualified individual under ADA and stated as her argument that "opposition to the sections cited in Defendant's Memorandum are incorporated by reference". However, the Court notes that there is no opposition to defendants' memorandum since the motion for summary judgment was deemed as unopposed. Hence, plaintiff has waived its objections to the determination that plaintiff was not a qualified individual under ADA. Davet v. Maccarone, 973 F.2d at 30-31,( "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal").

Fourthly, plaintiff alleges that the defendants failed to enforce a reasonable accommodation although defendants knew or perceived that plaintiff was a disabled person pursuant to ADA. However, plaintiff once again, refers to the incident amongst plaintiff and co-employees relating to the alleged threat posed by plaintiff as an argument to challenge defendants' request for dismissal. Further, plaintiff sustains that the medical documentation provided by the company's physician relating to the plaintiff's condition when she was taken to Smithkline's infirmary after the alleged threat took place is contradictory to the testimony provided by plaintiff in her deposition. The Court deems that plaintiff's arguments relating to the incident amongst plaintiff and her co-employees and the medical report provided by Smithkline's physician are irrelevant to an objection relating to whether defendants provided plaintiff with a reasonable accommodation. Whether plaintiff was provided with a reasonable accommodation due to her alleged disability is an uncontroverted fact evidenced by a non-rotating shift provided to plaintiff during her employment and in a non-isolated location.

## C. TITLE VII SEXUAL HARASSMENT CLAIM

Prior to filing a Title VII employment discrimination cause of action in court, Title VII requires aggrieved individuals to file an administrative charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," or within three hundred

days if the person is in a "deferral jurisdiction" such as Puerto Rico.  42 U.S.C. § 2000e-5(e)(1).  *See also* Landrau-Romero v. Banco Popular de Puerto Rico, 209 F.3d 10 (1st Cir. 2000); Thomas v. Eastman Kodak Company, 183 F.3d 38 (1st Cir. 1999).  However, "[T]he continuing violation doctrine creates an exception to Title VII's 300-day limitation period when the unlawful behavior complained of is deemed ongoing.  A continuing violation allows a plaintiff not only to allege otherwise time-barred acts, but more concretely, to receive damages, such as back pay, based on and reaching back to those acts."  Provencher v. CVS Pharmacy, Division of Melville Corporation, 145 F.3d 5, 14 (1st Cir. 1998)(citations omitted).  "[T]he continuing violation theory allows a plaintiff to prosecute claims that would otherwise be time-barred.  However, '[t]he [continuing violation] doctrine is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it'."  Gonzalez Garcia v. PREPA, 214 F.Supp.2d 194, 201-202 (D.Puerto Rico 2002), *quoting*, Dziura v. United States, 168 F.3d 581, 583 (1st Cir.1999).

To establish a continuing violation, a plaintiff "'must allege that a discriminatory act occurred or that a discriminatory policy existed' within the period prescribed by the statute."  Johnson v. Gen. Elec., 840 F.2d 132, 137 (1st Cir.1988)(*rev'd* on other grounds [an allegatoin of retaliation reasonably related to a filed case in court does not require EEOC administrative exhaustion] by Clockedile v. New Hampshire Dept.of Corrections, 245 F.3d 1, 6-7 (1st Cir. 2001) (*quoting* Velazquez v. Chardon, 736 F.2d 831, 833 (1st Cir.1984)).  "[A] complaint must indicate that not only the injury, but the discrimination, is in fact on-going."  Goldman v. Sears, Roebuck & Co., 607 F.2d 1014, 1018 (1st Cir.1979); Velazquez v. Chardon, 576 F.Supp. 476, 477 (D. Puerto Rico 1983).

On the other hand, hostile work environment claims are different in kind from discrete acts.  National Railroad Passenger Corp. v. Morgan, Jr., 536 U.S. 101 (2002).  "Their very nature involves repeated conduct." Id. "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. (Citations omitted). The Supreme Court in Morgan stated that, "[a] hostile work environment is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice'." Id., at 2074; 42 U.S.C. § 2000e-5(e)(1).  Therefore, "[t]he timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes

of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id.

Morgan however, "does not stand for the proposition that *any* timely allegation can properly anchor untimely allegation." Paquin v. MBNA Marketing Systems, Inc., 233 F.Supp.2d 58, 63 (D. Maine 2002). "Rather, pursuant to Morgan, a plaintiff's untimely allegations may be considered for the purposes of determining liability only if an act contributing to the hostile environment claim occurs within the filing period. Morgan, 122 S.Ct. at 2075 (stating that an employee cannot recover for untimely acts that have no relation to the timely acts); see also Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395-96 (1st Cir.2002)." Paquin, 233 F.Supp.2d at 63.

"Sexual harassment is a form of sex discrimination which Title VII prohibits." *See*, Acevedo Vargas v. Colon, 68 F.Supp.2d 80, 87 (D.P.R. 1999), *citing* Meritor Savings Bank v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399 (1986); Morrison v. Carleton Woolen Mills, Inc., 108 F.3d 429, 436-37 (1st Cir. 1997); Lipsett v. University of P.R., 864 F.2d 881, 897 (1st Cir. 1988). "Courts have recognized that sexual harassment can take place in two related ways; 'the first, *quid pro quo* harassment, occurs when a supervisor conditions the granting of economic or other job benefit upon the receipt of sexual favors from a subordinate, or punishes that subordinate for refusing to comply'." Acevedo Vargas, 68 F.Supp, 2d at 87, Lipsett, *supra*. The second type of sexual harassment, hostile work environment, 'occurs when one or more supervisors or co-workers create an atmosphere so infused with hostility towards members of one sex that they alter the conditions of employment for them'." Id*, see also* Meritor Savings, 477 U.S. at 65.

"The EEOC guidelines state that 'unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, [or] submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual ['quid pro quo'], or (2) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment ['hostile work environment']'." Id*,* 29 C.F.R. § 1604.119(a) (1999); *see also,* Ruiz v. Caribbean Restaurants, Inc., 54 F.Supp.2d 97

(D.P.R. 1999). "Sexual harassment allegations must be analyzed in light of the record as a whole and the totality of circumstances; such as the nature of the sexual advances and the context in which the alleged incidents occurred." Acevedo Vargas, 68 F.Supp.2d at 87; Lipsett, *supra*.

For example, in hostile work environment sexual harassment cases under Title VII, and utilizing the McDonnell Douglas burden-shifting framework, a plaintiff has to demonstrate "that [he or] she was subjected to a hostile work environment, [then, once that is satisfied] [he or] she must establish that the conduct which created the hostile situation should be imputed to the employer." Acevedo Vargas, 68 F.Supp.2d at 92; Meritor, 477 U.S. at 70-71; Kotcher v. Rosa and Sullivan Appliance Ctr. Inc., 957 F.2d 59, 63 (2nd Cir. 1992);Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2nd Cir. 1995).

"Hostile work environment sexual harassment occurs when an employer's [or co-worker's] conduct has the purpose or effect of unreasonably interfering with individual's work performance or creating an intimidating, hostile or offensive working environment." Acevedo Vargas, 68 F.Supp.2d at 92; Meritor, 477 U.S. at 65; Tomka v. Seiler Corp., 66 F.3d at 1305. "An abusive work environment is created 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficient severe or pervasive to alter the conditions of the victim's employment'." Acevedo Vargas, 68 F.Supp.2d at 92; Harris v. Forklift Systems Inc., 510 U.S. 17, 20, 114 S.Ct. 367, 370 (1993). "Whether a workplace should be viewed as hostile or abusive–from both a reasonable person's standpoint as well as the victim's subjective perception– can only be determined by considering the totality of the circumstances." Acevedo Vargas, 68 F.Supp.2d at 92; Tomka, 66 F.3d at 1305 (following Harris, 510 U.S. at 23). "These circumstances include: '1) the frequency of the alleged discriminatory conduct; 2) the increasing severity if the alleged discriminatory conduct; 3) whether it is physically threatening or humiliating, or merely offensive, and; 4) whether it unreasonably interferes with the employee's work performance." Harris, 510 U.S. at 24; Hernandez v. Wangen, 938 F.Supp. 1052, 1058 (D.P.R. 1996). The employee "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations" but in fact constituted discrimination because of sex. Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 258 (1st Cir. 1999). The hostile work environment must exist "because of such individual's ... sex". 42 U.S.C. §2000e-2(a)(1).

Of course, an employer is liable to plaintiff under the following circumstances, once plaintiff

establishes that either *quid pro quo* or *hostile work environment* sexual harassment took place. In federal law, employer's vicarious liability for sexual harassment by supervisors under Title VII, is governed by the general common law principles of agency. See <u>Acevedo Vargas</u>, 68 F.Supp.2d at 87; citing <u>Burlington Industries Inc. v. Ellerth</u>, 524 U.S. 742, 118 S.Ct. 2257 (1998). "The Supreme Court in <u>Burlington</u> analyzed the central principles of agency law: '[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment'." <u>Acevedo Vargas</u>, 68 F.Supp.2d at 87; Section 219(1) of the Restatement. "However, 'the scope of employment does not define the only basis for employer liability under agency principles'." *Id*., <u>Burlington Industries Inc</u>, 118 S.Ct. at 2267. "The Supreme Court stated that such principles may impose liability on employers even when employees commit torts outside the scope of employment." <u>Acevedo Vargas</u>, 68 F.Supp.2d at 87. "Under Section 219(2), which provides exceptions that act to impose employer liability for acts of its employees outside the scope of employment, provides in pertinent part that 'a master is not subject to liability for the torts of his servants acting outside the scope of their employment unless: ...(b) the master was negligent or reckless...'." <u>Acevedo Vargas</u>, 68 F.Supp.2d at 88; Section 219(2)(b). "Accordingly, the Supreme Court held that although sexual harassment is outside the scope of employment, because the conduct was for personal motives, an employer can be liable, nonetheless, where its own negligence is the cause of the harassment." *Id*., <u>Burlington Industries Inc</u>, 118 S.Ct. at 2273. "That is, an employer is negligent with respect to sexual harassment acts on behalf of its agents or supervisory employees if it knew or should have known about the conduct and failed to stop it". <u>Burlington Industries Inc</u>, 118 S.Ct. at 2273. Thus, "negligence sets that minimum standard for employer liability." <u>Acevedo Vargas</u>, 68 F.Supp.2d at 88; <u>Burlington Industries Inc</u>, 118 S.Ct. at 2267.

The Magistrate Judge concluded that the gist of plaintiff's claims relates to whether plaintiff suffered emotional distress and "extreme mental trauma" resulting from the alleged sexual harassment by co-defendant Jose Ramon Rivera, and whether the harassor's conduct was known to their employer, Smithkline.  Likewise, the Magistrate Judge determined that co-defendants moved for summary judgment sustaining that some of plaintiff's claims were time barred; that the complaint failed to state a claim for hostile work environment; and that plaintiff failed to use the grievance procedure and the protective and corrective measures provided by Smithkline's policy against sexual harassment.

The R & R determined that plaintiff's allegations referring to sexual harassment acts

occurring before the 8th day of January 2000, and which were filed before the EEOC, were time barred because they fell outside the 300 day term provided by statute to file said claim, and since plaintiff had failed to allege that the claims were continuing in nature the Court could not entertain said claims.[6]  As to the timely filed sexual harassment claims, the Magistrate Judge determined that plaintiff's claims as averred stated a claim for sexual harassment in the hostile work environment modality.

Further, the R & R examined plaintiff's testimony and found that co-defendant, Jose Ramon Rivera conduct comprising the alleged sexual harassment incidents as averred by plaintiff occurred in the year 2000.  However, the Magistrate Judge deemed that said incidents involving co-defendant Jose Ramon Rivera were comments made in poor state, and that said comments were not sufficiently severe nor pervasive and/or physically threatening or humiliating to plaintiff sustaining a hostile work environment claim.  Furthermore, the Magistrate Judge concluded that according to the applicable jurisprudence, the comments made by co-defendant were not made within the required frequency to establish an abusing working environment.  As to this matter, the Magistrate Judge concluded that although plaintiff had an extensive career at Smithkline, plaintiff's deposition showed that the five (5) incidents plaintiff refers as amounting to alleged sexual harassment conduct occurred within plaintiff's last year of employment.

Furthermore, the R & R concluded that the comments made by co-defendant Jose Ramon Rivera were not "overtly sexual", nor physically threatening and/or were made to demean plaintiff. Moreover, the R & R stated that although said comments could be considered as offensive because of their poor taste, the Magistrate Judge could not determine that they were more than mere "offensive utterances".  Similarly, the R & R deemed that plaintiff made a showing that said comments did interfere with plaintiff's ability to perform her duties and/or that said comments were determinative in terminating plaintiff from employment.  As to this matter, the Magistrate Judge concluded that the record clearly reflected that plaintiff was terminated due to her inappropriate work behavior and her failure to comply with set work rules and regulations previously known to plaintiff. In sum, the Magistrate Judge deemed that the averments in the complaint failed to sustain a finding for a hostile work environment sexual harassment claim.

---

[6] Plaintiff's Title VII administrative charge before the EEOC was filed on November 3, 2000.

Furthermore, as to plaintiff's failure to exhaust the grievance procedure established by Smithkline, the Magistrate Judge was not moved to conclude that plaintiff's termination resulted from her supervisor's harassment but, in turn, was the result of her own behavior hence the defendants were entitled to raise the Faragher doctrine affirmative defense requiring the employee to use the procedure established by the company enabling the company to be notified and to take affirmative action. But the law is different than cited by the Hon. Magistrate Judge:

> [W]hen no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed,Rule Civ.Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Faragher v. City of Boca Raton, 524 U.S. at 807. [7]

This is precisely the case here, plaintiff did not suffer any tangible employment action due to sex harassment; the employer exercised reasonable care, and the employee failed to use the corrective mechanism in place. Hence, the Faragher defense is available and effective in the instant case.

## D. SUPPLEMENTAL CLAIMS

Finally, the Magistrate Judge recommended that since all plaintiff's federal claims should be dismissed the claims under local state law should be also dismissed without prejudice. Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)(standing for the proposition that "[A]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."); 28 U.S.C. §1367(c)(3). Plaintiff does not challenge said determination but rather emphasizes that the dismissal should be awarded without prejudice.

## LEGAL ANALYSIS

## I. ADA, TITLE VII AND INDIVIDUAL LIABILITY

---

[7] The Court notes that plaintiff fails in the criteria that the conduct caused that the terms and conditions employed were caused to be altered. (R & R, Docket No. 49, p. 26, *citing* Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)).

As previously discussed, this District Court has consistently ruled that individual liability does not attach under Title VII and ADA claims.  *See*, Acevedo Vargas v. Colón, 2 F.Supp.2d 203, 206-207 (D.P.R.1998) (Title VII); Fajardo, 1 F.Supp.2d 117, 120 (D. P.R. 1998) (RLA) (ADA); Rivera Rodriguez v. Police Dep't of P.R., 968 F.Supp. 783, 785-786 (D. P.R. 1997) (JP) (ADA); Moreno v. John Crane, Inc., 963 F.Supp. 72, 76 (D. P.R.1997) (SEC) (ADA);;  Contreras Bordallo v. Banco Bilbao Vizcaya de P.R., 952 F.Supp. 72 (D.P.R.1997) (Title VII); Hernandez v. Wangen, 938 F.Supp. 1052, 1063-65 (D. P.R. 1996) (HL) (Title VII).

Further, because plaintiff has raised its objections to this matter in a perfunctory manner, said objections are deemed waived.  *See*, U.S. v. Zannino, 895 F.2d at 17.  Therefore, the Court hereby **ADOPTS** the Magistrate Judge's R & R, **GRANTS** summary judgment and plaintiff's claims are hereby **DISMISSED** against Co-defendants in their individual capacity under ADA and Title VII **WITH PREJUDICE**.

### II. ADA CLAIMS

The parties move the Court to determine whether plaintiff has met her burden showing that the allegations made in the complaint met the required threshold to establish a *prima facie* case under ADA.  The Magistrate Judge's R & R concluded that although depression has been determined to be an impairment pursuant to ADA within this Circuit, plaintiff failed to established how said impairment substantially limited her major life activities, in the instant case, working and sleeping.

To establish a claim of disability discrimination under the A.D.A., a plaintiff must first demonstrate that  she is disabled within the meaning of the Act. That is, **she has to establish a physical or mental impairment that substantially limits one or more of her major life activities**. Further,  she has to show that she has a record of such impairment or that she is being regarded as having such an impairment. See, Bailey v. Georgia-Pacific Corporation, 306 F.3d 1162, 1166 (1st Cir. 2002); 42 U.S.C. § 12102(2); Carroll v. Xerox, 294 F.3d 231, 237 (1st Cir. 2002).

A three-part analysis is applied when considering, whether the plaintiff has a physical or mental impairment that substantially limits one or more of her major life activities. First, the Court must consider whether plaintiff's condition constitutes a mental or physical impairment. Second, the Court shall identify the life activity upon which plaintiff relies, and must determine whether said impairment constitutes a major life activity under the ADA. Third, the Court must ask whether the impairment substantially limited the major life activity. Bragdon v. Abbott, 524 U.S. 631 (1998);

Carroll v Xerox Corp., 294 F.3d 231, 238 (1ˢᵗ Cir., 2002); Toyota Motor Mfg. Inc. v. Williams, 534 U.S. 184, (2002); Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 239-240 (1ˢᵗ Cir. 2001). "Major life activities are only those that are of central importance to daily life." Toyota Motor Mfg. v. Williams, 534 U.S. at 197-198. "[A]n individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Id., at 198.

Whether a person has a disability under the ADA is an individualized inquiry, Sutton v. United Air Lines, 527 U.S. 471, 483(1999)[8],  and the plaintiff has the burden of establishing each of the above referred elements(one of the elements being a limit to a major life activity). Bailey v. Georgia-Pacific Corporation, 306 F.3d at 1167. The determination of whether an individual has a disability is based on the effect of that impairment on the life of the individual, taking into consideration that some impairments may be disabling for particular individuals but not for others. 29 C.F.R. § 1630, App. at 402; Katz v. City Metal Co. Inc, 87 F.3d at 32; quoting Chandler v, City of Dallas, 2 F.3d 1385, 1396 (5ᵗʰ Cir. 1995) (recognizing that "the effect of a given type of impairment...can vary widely from individual to individual").

In order to prove that an impairment "substantially limits" a major life activity, claimant must show either that it is unable to perform a major life activity that an average person in the general population can perform or that she is significantly restricted in the performance of a particular major life activity as compared to an average person in the general population.  *See* 29 C.F.R. §1630.2(j)(1).  Needless is to say that to be "substantially limiting" the impairment impact must be permanent or long term.  Carroll v. Xerox Corp., 294 F.3d at 238(*quoting* Toyota Motor Mfg. v. Williams, 534 U.S. at 198).  Furthermore, it must be said that when a claimant sustains that "[w]hen the major life activity of working, the statutory phrase 'substantially limits' requires ... that plaintiffs allege they are unable to work in a broad class of jobs".  Toyota Motor Mfg. v. Williams, 534 U.S. at 200(*quoting* Sutton v. United Airlines, Inc., 527 U.S. 471, 491 (1999).

"Merely having an impairment does not make [an individual] disabled for purposes of the

---

8

Considering that the ADA defines "disability" "with respect to an individual," 42 U.S.C. § 12102(2), "makes clear that Congress intended the existence of a disability to be determined in such a case-by-case manner". Toyota Mfg. Inc v. Williams, 534 U.S. at 198; Sutton, 527 U.S. at 483; Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999); Bragdon, 52 U.S. at 641-642.

ADA." Toyota Mfg. Inc v. Williams, 534 U.S. at 195. In the same manner, the Supreme Court has also stated that not all physical impairments rise to the level of disability under the statute. Albertson's, Inc. v. Kirkinburg, 527 U.S. 555, 565-566 (1999).  Further, "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." Toyota Mfg. Inc v. Williams, 534 U.S. at 198. Rather in the opposite, ADA mandates individuals "claiming the Act's protection...to prove a disability by offering evidence that the extent of the limitation in terms of their own experience...is substantial." Id., quoting, Albertson's, Inc. v. Kirkinburg, 527 U.S. at 567. An individual must proffer evidence from which a reasonable inference can be drawn that a major life activity is substantially limited Gillen v. Fallon Ambulance Service 283 F.2d 11, 24 (1st Cir., 2002) citing Snow v. Ridgeview Med. Center128 F.3d at 1207 (8th Cir.,1997).

It is known that ADA provides three (3) alternative definitions of "disability", to wit, an individual is considered to be disabled if  1) he has a "physical or mental impairment that substantially limits one or more of its major life activities; 2) the individual has a record of such an impairment; and 3) the individual is regarded as having such an impairment.  *See* 42 U.S.C. §§12102(2)(A), (B), and (C).  However, "major life activities" are considered those "activities that are 'of central importance to daily life.'" Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002)(*quoting* Toyota Mfg. v. Williams, 534 U.S. at 197).  Relevant to the instant case, the courts have recognized performing manual tasks, Toyota Mfg. v. Williams, 534 U.S. at 198; and sleeping Calero-Cerezo v. DOJ, 355 F.3d 6, 21 (1st Cir. 2004)(*citing* Criado v. IBM Corp., 145 F.3d 437, 442-443 (1st Cir. 1998) as various major life activities.

As stated previously, in the instant case plaintiff has failed to established how does the depression suffered  "substantially limits" her major life activities such as, working and sleeping. A thorough examination shows that the record is devoid of any evidence showing that plaintiff is unable to perform a major life activity [working and/or sleeping] that an average person in the general population can perform, or that she is significantly restricted in the performance of [working and/or sleeping] compared to an average person in the general population.  *See* 29 C.F.R. §1630.2(j)(1).  Furthermore, the record fails to show that plaintiff's depression deprives her from working in a broad class of jobs.  Toyota Motor Mfg. v. Williams, 534 U.S. at 200.

Moreover, plaintiff has admitted that she did work, although temporarily, in the year 2001

for Wyeth but had to leave the job because she was to be trained for shift rotation and her medication limited her working schedule.  Afterwards, plaintiff worked for "Mi Casita Feliz" but also left because it was a transitory job without benefits and subject to sudden changes.  Plaintiff's admissions by themselves are sufficient to show that plaintiff is not deprived from working in a broad class of jobs.  The evidence further shows that plaintiff may work during a day shift in order to allow her to take medication, as she did during her employment for co-defendant, Smithkline.  Furthermore, plaintiff has failed to show that she is restricted from working as compared to an average person in the general population.  Consequently, the Court deems that plaintiff has failed to show that her impairment "substantially limits' plaintiff from working hence her ADA claim as to the major life activity of working fails.

As to plaintiff's allegations that her sleeping activity has been substantially limited as result of her impairment, the record simply shows that plaintiff has some difficulty in sleeping, and that she must take medications to sleep.  However, the record is devoid of any evidence indicating how her sleep was limited nor whether her average sleeping hours were less than the average sleeping hours for the average person to be able to work.

In sum, for the reasons aforementioned the Court deems that plaintiffs failed to establish a *prima facie* case of discrimination under ADA. Simply expressed, plaintiff failed to demonstrate how her major life activities were substantially limited as a result of her impairment.  Accordingly, the Magistrate Judge's R & R is **ADOPTED** as to plaintiff's ADA claims and defendants' request for the dismissal is hereby **GRANTED**. Hence, plaintiffs' claim pursuant to A.D.A. is hereby **DISMISSED WITH PREJUDICE**.

### III. TITLE VII CLAIMS

Plaintiff's Title VII claims relate to alleged sexual harassment in the modality of hostile work environment resulting in plaintiff suffering "extreme mental trauma" and emotional distress. According to plaintiff, said conduct was allegedly performed by plaintiff's supervisor, co-defendant Jose Ramon Rivera and that co-defendant, Smithkline was aware of Rivera's conduct.  Co-defendants' summary judgment countered plaintiff's averments stating affirmatively, that plaintiff failed to make a claim of hostile work environment, that plaintiff failed to avail from the benefits of the grievance procedure provided by the employer's policy against sexual harassment.  Finally, co-defendants' motion for summary judgment sustain that some of plaintiff's Title VII claims are time

barred.

As stated previously, in order for a plaintiff to prosecute a Title VII claim in court an administrative charge must be filed within 300 days after the alleged employment practice.  Unless the nature of the violation claimed by plaintiff may be considered as a continuing violation, claims falling outside this statutory term are deemed time barred.  Consequently, since the administrative charge before the EEOC was filed on November 3, 2000, all conduct performed by defendant occurring on or before January 8, 2000, amounting to claims under a hostile work environment sexual harassment conduct are time barred.

It is known that an employer will be liable for hostile work environment due to sexual harassment should an "employer be negligent with respect to sexual harassment acts on behalf of its agents or supervisory employees if it knew or should have known about the conduct and failed to stop it". Burlington Industries Inc, 118 S.Ct. at 2273.   Nevertheless, in hostile work environment sexual harassment cases under Title VII, a plaintiff has to demonstrate that he/she was subjected to a hostile work environment and that the conduct which created the hostile situation should be imputed to the employer.  Acevedo Vargas, 68 F.Supp.2d at 92; Meritor, 477 U.S. at 70-71; Kotcher v. Rosa and Sullivan Appliance Ctr. Inc., 957 F.2d 59, 63 (2nd Cir. 1992);Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2nd Cir. 1995).

Notwithstanding, in hostile work environment sexual harassment claims, plaintiff has to show that the employer's conduct did "unreasonably interfere" with plaintiff's performance or created an intimidating, hostile or offensive working environment.  Acevedo Vargas, 68 F.Supp.2d at 92.  Furthermore, plaintiff's workplace must be imbued with discriminatory *animus* that is sufficient severe or pervasive to alter the conditions of the victim's employment'.  Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 783 (1st Cir. 1990)(expressing doubt as to whether five sexual comments made over the course of a four to five week period constitutes harassment severe or pervasive.); Acevedo Vargas, 68 F.Supp.2d at 92.

Thus, the Court must consider the totality of the circumstances when determining whether the workplace should be considered as hostile or abusive, from both a reasonable person's standpoint as well as the victim's subjective perception.  These circumstances include: '1) the frequency of the alleged discriminatory conduct; 2) the increasing severity if the alleged discriminatory conduct; 3) whether it is physically threatening or humiliating, or merely offensive, and; 4) whether it

unreasonably interferes with the employee's work performance." Harris, 510 U.S. at 24; Hernandez v. Wangen, 938 F.Supp. 1052, 1058 (D.P.R. 1996). The employee "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations" but in fact constituted discrimination because of sex. Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 258 (1st Cir. 1999).

In the instant claim, the R & R determined that plaintiff's deposition showed that her hostile work environment sexual harassment claims were grounded in the following incidents which occurred in the year 2000: (a) co-defendant Rivera told plaintiff to "put on a mini skirt like Ana Castrodad to see your little thighs and Ojeda can take a peek at you" while there were several other employees present; (b) co-defendant Rivera entered the Control Area and sat on Ana Robles' thighs (plaintiff was not present when the incident occurred, but co-defendant told plaintiff later while another employee was present); (c) co-defendant Rivera made a comment as to how good looking another employee was; (d) co-defendant Rivera commented first while alone with plaintiff, and in a second opportunity in front of another co-employee, Griselle Guevara, that Guevara was very good looking ans that co-defendant Ramos' wife was a piece of junk; (e) co-defendant Rivera told plaintiff that another co-employee, Betsy Rodriguez obtained her position within Smithkline due to her personal relationship with another co-employee insinuating that they had an affair.

An examination of said allegations do not show that Jose Ramon Rivera's conduct did "unreasonably interfere" with plaintiff's performance or created an intimidating, hostile or offensive working environment. Acevedo Vargas, 68 F.Supp.2d at 92. Furthermore, the averments proffered by plaintiff do not show that the workplace is impregnated with a discriminatory *animus* against plaintiff sufficiently severe or pervasive that altered plaintiff's employment conditions. Chamberlin v. 101 Realty, Inc., 915 F.2d at 783; Acevedo Vargas, 68 F.Supp.2d at 92.

Further, since it is known that the Court must consider the totality of the circumstances when determining whether the workplace must be considered as hostile or abusive from both a reasonable person's standpoint as well as the victim's subjective perception. The evidence on the record show that plaintiff worked since 1979 for the defendant an it was not until the year 2000 that the above mentioned comments were made. Moreover, plaintiff refers to only five incidents that occurred within the last year of employment with defendant as the grounds to her hostile work environment sexual harassment claim. However, the Court deems that five incidents within a year cannot be

considered to establish the frequency required to establish a sexual harassment pattern.  *See*, White v. New Hampshire Dep't of Corrections, 221 F.3d 254 (1st Cir. 2000)(sexual references were made in a constant daily basis);  Chamberlin v. 101 Realty, Inc., 915 F.2d at 783;  Lipsett v. University of Puerto Rico, 864 F.2d 881 (1st Cir. 1988)(plaintiff subjected to a pattern of three years period of ongoing sexual harassment).

Further, plaintiff has not showed that besides the comments made by co-defendant Rivera increased in severity nor that said comments were physically threatening and/or that said comments interfered with plaintiff's work performance.  Harris, 510 U.S. at 24; Hernandez v. Wangen, 938 F.Supp. 1052, 1058 (D.P.R. 1996).  Consequently, the Court deems that although the conduct displayed by co-defendant Jose Ramon Rivera should be considered as offensive utterances, the record is devoid of evidence showing that said conduct was sufficiently severe or pervasive altering the plaintiff's employment and creating an abusive working environment hence violating Title VII.

Moreover, as to Smithkline's responsibility for co-defendant Jose Ramon Rivera's conduct plaintiff has failed to demonstrate that she was subjected to a hostile work environment and that the conduct which created the hostile situation should be imputed to Smithkline.  Acevedo Vargas, 68 F.Supp.2d at 92.  Furthermore, plaintiff has failed to meet her burden showing that co-defendant's conduct was more than being "merely tinged with offensive sexual connotations" and that in fact the adversary employment action constituted discrimination because of sex. Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d at 258.  An averment merely stating that at one given moment plaintiff complaint to someone within the Human Resources Department and that she was "cut-off" and not allowed to file a proper grievance does not provide sufficient grounds to impute the alleged conduct to Smithkline.

Finally, as to the co-defendants affirmative defense related to plaintiff's failure to avail herself of the policy established by Smithkline to prevent harassment in the workplace, the "Faragher/Ellerth Defense" is raised by a defendant when vicarious liability is alleged by plaintiff as the result of the hostile environment created by a supervisor with "higher or immediate" authority over said plaintiff.  "If no tangible employment action is taken", the defense is comprised of two prongs, to wit: 1) "the employer exercised reasonable care to prevent and correct promptly any [sexual harassment] behavior; and 2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise".

*See* Faragher v. City of Boca Raton, 524 U.S. at 807.  However, if the harassment culminates in a tangible employment action, the defense is not available to the defendant.  *See* Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

In the instant case, plaintiff's deposition shows that in one occasion she talked to an official of Smithkline's Human Resources department but, as stated by plaintiff, she was "cut off".  The record is devoid of evidence showing that an official sexual harassment complaint was filed within Smithkline's Human Resources Department nor that there was any further attempt by defendant to properly avail of the procedure informing Smithkline the alleged harassing conduct.  Furthermore, the evidence on the record shows that plaintiff was terminated from employment because of her emotional outbursts of threatening to kill co-workers and not as a retaliatory action relating to any harassment conduct charged against Jose Ramon Rivera.  Consequently, the Court deems that Smithkline is entitled to raise the affirmative defense based on Faragher/Ellerth doctrine.  Hence summary judgment is appropriate on this ground.

Therefore, the Court hereby **GRANTS** summary judgment for defendants and **DISMISSES** plaintiff's Title VII hostile work environment claims against the co-defendants **WITH PREJUDICE**.

### IV. SUPPLEMENTAL CLAIMS UNDER LOCAL LAW

Finally, plaintiff does not challenge the conclusions reached by the Magistrate Judge as to the dismissal without prejudice of all supplemental claims filed by plaintiff.  Rather, plaintiff emphasizes that the dismissal of the supplemental claims should be without prejudice.  Consequently, since there are no objections to the Magistrate Judge's findings recommending the dismissal without prejudice of said supplemental claims, the Court hereby **GRANTS** summary judgment and plaintiff's supplemental claims against the co-defendants are hereby **DISMISSED WITHOUT PREJUDICE**.  *See* Rodriguez v. Doral Mortgage Corp., 57 F.3d at 1177; 28 U.S.C. §1367(c)(3).

### CONCLUSIONS

For the reasons herein stated the Court hereby **ADOPTS** in toto the Magistrate Judge's Report and Recommendation (Docket No. 49) and hereby **GRANTS** Smith Kline Beecham Pharmaceuticals (SmithKline), and Jose Ramon Rivera's *Defendants' Motion for Summary Judgment* (Docket No. 26).  Consequently,  plaintiff's claims are hereby **DISMISSED** against Co-

defendants in their individual capacity under ADA and Title VII **WITH PREJUDICE**; plaintiffs' claim pursuant to the A.D.A. against co-defendants is hereby **DISMISSED WITH PREJUDICE**; plaintiff's Title VII hostile work environment claims against the co-defendants are **DISMISSED WITH PREJUDICE**; and plaintiff's supplemental claims against the co-defendants are hereby **DISMISSED WITHOUT PREJUDICE**.  **JUDGMENT** shall be entered accordingly.


      **IT IS SO ORDERED.**

In San Juan, Puerto Rico this 31st day of October 2005.


                                      **S/DANIEL R. DOMINGUEZ**

                                      **DANIEL R. DOMINGUEZ**

                                      **U.S. DISTRICT JUDGE**